IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THE ESTATE OF NICHOLAS WAYNE GARRISON, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO.:_____ ) |
| SHERIFF MARK PETTWAY, ADVANCED CORRECTIONAL HEALTHCARE and JEFFERSON COUNTY, ALABAMA, | ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

For a complaint against Jefferson County, Advanced Correctional Healthcare and Sheriff Mark Pettway, the Estate of Nicholas Wayne Garrison states:

### Introduction

1. Nick Garrison was a United States Army Veteran who developed opioid use disorder while in service. In his struggle with addiction, he eventually entered drug court and/or veterans court in the Circuit Court of Jefferson County, Alabama. He began medicine assisted therapy, which combines prescription medication with therapy to combat opioid use.

2.     When Garrison was arrested on a failure to appear, the Jefferson County Jail was housing many more inmates than could be safely accommodated. In the years prior to Garrison's arrest, the Sheriff and Jefferson County had been the subject of a consent judgment restricting the number of inmates allowed in the jail at any given time.  The judgment was entered in litigation that may have been collusive at the outset of that case (at least one lead attorney for the plaintiff class was an unindicted co-conspirator in *U.S. v. Handley* and was disbarred after he signed an affidavit confessing that he had stolen money from a client), but it at least imposed some limits on the jail population, which limits were willfully ignored by the time Garrison entered custody.

3.     Advanced Correctional Healthcare and the Sheriff both had actual, subjective knowledge that Garrison suffered opioid use disorder. They both had actual, subjective knowledge that medicine assisted therapy is necessary to combat the disorder. They both knew, or at least they should have known, of the very high correlation between abrupt discontinuation of opioid use and suicide among veterans, which correlation was observed less than 10 blocks north of the jail where Garrison died. They both knew that, in fact, Garrison had suicidal ideation. They both knew that he arrived in the jail having been prescribed medicine to assist him in the discontinuation of opioids.

4. If they were not aware of these facts even before Garrison was arrested for failing to appear, they certainly knew them shortly afterwards, when Garrison completed his intake questionnaire. Yet they did absolutely nothing to treat Garrison's opioid use disorder. They did not even give the medication that he was already prescribed to take or allow him to have other medications used in treating opioid use disorder. Predictably enough, he committed suicide while in custody. Failing to provide Garrison with the medication prescribed to assist him in managing his opioid addiction was a gross violation of the Eighth and Fourteenth Amendments of the United States Constitution, especially since he was detained for reasons incident to his addiction. There was no legitimate penological reason for denying this medication: to the contrary, MAT is provided at the Jefferson County Jail today, because the University of Alabama obtained a grant to fund MAT in the jail.

5. This action is to recover damages for Garrison's estate, whose heir is his four-year old daughter.

## Parties

6. Beth McElroy is the County Administrator for Jefferson County, Alabama, and is the administrator for the Estate of Nicholas Wayne Garrison.

7. Mark Pettway is the Sheriff of Jefferson County.

8. Advanced Correctional Healthcare is a foreign corporation doing business in Alabama.

9. Jefferson County is a political subdivision responsible for funding the operations of the Jefferson County Jail.

## Jurisdiction

10. Plaintiff brings this action pursuant to 42 U.S.C. 1983 and state law.

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1337.

12. Venue for this action is proper in the United States District Court for the Northern District of Alabama, Southern Division.

## Facts

13. Nicholas Wayne Garrison was a veteran of the United States Army.

14. Garrison suffered from opioid use disorder.

15. After he was discharged from the Army, Garrison worked in the construction industry.

16. Garrison used heroin.

17. Garrison was arrested and charged with various offenses.

18. Garrison was prescribed medicine assisted therapy (MAT), which included prescription medication to assist him in managing his opioid use disorder.

19. Garrison was a defendant in drug court.

20. After Garrison became a defendant in drug court, he relapsed, and he was arrested after failing to appear.

21. After Garrison was arrested, he was housed in the Jefferson County Jail.

22. Upon admission to the Jefferson County Jail, Garrison was violently ill from abruptly discontinuing opioids.

23. The minimal level of care associated with constitutional requirements for opioid use disorder patients detained in jails requires continuing the medication and other medically necessary measures prescribed before the patients are detained in jails, until and unless the measures are medically contraindicated.

24. The correlation between abrupt, unmedicated discontinuation of opioids and suicide is well known and very strong, especially among veterans.

25. At and after intake in the Jefferson County Jail, Garrison reported symptoms of depression.

26. Upon information and belief, Garrison reported suicidal ideation to Advanced Correctional Healthcare personnel.

27. Advanced Correctional Healthcare did not provide any medication to treat the opioid use disorder from which Garrison suffered. In fact, Advanced Correctional Healthcare had a pattern and practice of refusing to administer medications of any kind to any inmate with a history of substance abuse disorder,

if the necessity of the medication might possibly be attributed to withdrawal or other symptoms associated with discontinuing drug use. Thus, for example, Advanced Correctional Healthcare would not administer anti-depressants even if they had been prescribed for a patient prior to his or her being detained at the Jefferson County Jail, if the patient had a substance use disorder upon arriving at the jail, often telling the patient, even months into his or her incarceration, that he or she was "just" suffering withdrawal.

28. Advanced Correctional Healthcare did not provide the therapy or any other therapeutic measure to treat the opioid use disorder from which Garrison suffered.

29. After threatening suicide, Garrison committed suicide while in custody.

30. Garrison committed suicide while he was a trustee in charge of cleaning the jail.

31. By virtue of his position as a trustee, Garrison was allowed to wander off camera and into rooms that were conducive to suicide.

32. The jail was unconscionably crowded while Garrison was an inmate, so the provision of medical care was sharply curtailed and the ability to exclude illegal opioids from the jail was overwhelmed.

33. At all times relevant to this complaint, all defendants acted under color of state law.

## Count I
## 42 U.S.C. 1983

34. Plaintiff adopts and incorporates by reference paragraphs 1 through 33 of this Complaint.

35. By failing to provide medicine and other therapeutic measures that were prescribed for Garrison before Garrison was detained in the Jefferson County Jail, Advanced Correctional Healthcare and Sheriff Mark Pettway violated the rights of Garrison.

36. The Sheriff and ACH actually knew of Garrison's suicidal ideation because they, or their deputies, actually asked him about his suicidal ideation and he responded accordingly.

37. Even if the Sheriff and ACH had not actually inquired of Garrison to learn of his suicidal ideation, or if he had not responded to those inquiries, they would have had constructive knowledge of his risk of suicide given his past history of drug abuse and the well-known risk between abrupt discontinuation of opioid use and suicide in veterans.

38. Even if they had not known of his suicidal ideation, the Sheriff and ACH could not lawfully deprive Garrison of medicine and therapy prescribed for him before he was detained.

39. There was no legitimate penological reason to deny medical care and therapy to Garrison: today, such medicine and therapy is provided routinely to inmates in the Jefferson County Jail, because a third party had the initiative to get a grant for such medicine and therapy for opioid use disorder patients. The Sheriff and ACH denied medical care and therapy to Garrison because they like to line their own pockets, and because they are recklessly indifferent to the health of inmates. Their refusal to provide therapy and prescription medication to Garrison caused him horrible suffering and justifies the imposition of punitive damages, in addition to and regardless of the damages associated with and caused by his suicide.

## Count II
## Deliberate Indifference
## Jefferson County

40. Plaintiff adopts and incorporates by reference paragraphs 1 through 33 of this Complaint.

41. Jefferson County deliberately failed to fund healthcare for the Jefferson County Jail in an amount sufficient to pay for medicine assisted therapy in the Jail.

42. Jefferson County knew that healthcare was inadequate in the jail, but despite such knowledge, continued to provide inadequate funding to pay for MAT, such that ACH, a notoriously incompetent provider of medicine in the corrections

medicine context, provided substandard healthcare that included no MAT. Jefferson County is judicially estopped from denying such knowledge in light of the claims that Jefferson County has made against various manufacturers and distributors of synthetic opioids, which claims assert that Jefferson County and its agencies have suffered financial losses by virtue of the experiences of such persons as Garrison.

43. This failure to fund proximately caused the death of Nick Garrison.

## Count IIII
## Wrongful Death
## Sheriff Mark Pettway, ACH, and Jefferson County

44. Plaintiff adopts and incorporates by reference paragraphs 1 through 33 of this Complaint.

45. The actions of the defendants were willful and wanton.

46. The defendants caused the death of Nick Garrison.

WHEREFORE, Plaintiff demands compensatory and punitive damages, costs and attorneys' fees.

Respectfully submitted,

/s/ Frank Ozment
Frank Ozment (ASB-7203-N73J)
Frank Ozment Attorney at Law, LLC
217 Country Club Park, Box 501
Birmingham, Alabama 35213
(205) 847-5401
frankozmentlaw@gmail.com
***Attorney for Plaintiff***

Addresses for Defendants:

Sheriff Mark Pettway
Jefferson County Sheriff's Office
2200 Reverend Abraham Woods Jr. Blvd.
Birmingham, Alabama 35203

Advanced Correctional Healthcare, Inc.
3922 W. Baring Trace
Peoria, Illinois 61615

Jefferson County, Alabama
716 Richard Arrington Jr. Blvd. N.
Birmingham, Alabama 35203